```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEPHEN LOCURTO,

                              Plaintiff,
                                                    REPORT &
                                                    RECOMMENDATION
            -against-                               23-cv-386-DG-SJB

NYU LANGONE LUTHERAN HOSPITAL,

                              Defendant.
----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

*Pro se* Plaintiff Stephen LoCurto ("Plaintiff" or "LoCurto"), who is currently incarcerated at Metropolitan Detention Center ("MDC") Brooklyn, has filed two lawsuits: one against Defendant NYU Langone Lutheran Hospital ("NYU Langone"); and one against Defendants United States Bureau of Prisons ("BOP"), the MDC, and Officers Hernandez, W. Santiago, O. Martinez, and Lieutenant Lidaker (collectively, the "Federal Defendants").  In this action against NYU Langone, LoCurto alleges violations of 18 U.S.C. § 1959(a)(1) and § 1959(a)(5), 42 U.S.C. § 1983, and medical malpractice. He alleges that, while at MDC, he was poisoned by Officer Hernandez, that the guards ignored his cries for help, and that he was later taken to NYU Langone, where employees worked with BOP staff to kill him.  (*See generally* Am. Compl. against BOP ("BOP Am. Compl."), Case No. 23-CV-387, Dkt. No. 19; Am. Compl. against NYU Langone ("NYU Langone Am. Compl."), Case No. 23-CV-386, Dkt. No. 20).  The Court addresses NYU Langone's Motion to Dismiss in this Report and Recommendation, and for the reasons stated below, recommends that the motion be granted in full.

FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this motion, the Court is "required to treat" the Complaint's "factual allegations as true, drawing all reasonable inferences in favor of [the Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.* When a party proceeds *pro se*, the Court must liberally construe the litigant's submissions and interpret them to raise the strongest arguments that they suggest. *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "[A] *pro se* complaint, however inartfully pled, must be held to less stringent standards that formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted).

Because the events at issue cross both cases, herein the Court has recited and considers facts from Plaintiff's Amended Complaints in both actions, which refer to each other; the documents he attached to those pleadings; and his opposition papers. *See Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 360–61 (S.D.N.Y. 2013) ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken."); *see also Levinson v. United States*, 594 F. Supp. 3d 559, 567 (S.D.N.Y. 2022) ("[A] district court deciding a motion to dismiss may consider factual allegations made by a

*pro se* party in his papers opposing the motion [to dismiss]." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

In January 2021, when LoCurto was incarcerated at MDC, (BOP Am. Compl. at 4, 11), his food was allegedly poisoned by Officer Hernandez, (*id.* at 11). After eating the allegedly tainted food, LoCurto immediately began feeling "unbearable pain." (*Id.*). He began yelling and screaming, and he vomited. (*Id.*). He started pushing the emergency call button in his cell, but it did not work. (*Id.*). While he was yelling for help, Officer Hernandez walked by his cell, and other officers heard him screaming. (*Id.*). Throughout the night, LoCurto yelled, "please help me" and "I'm dying," as he continued to hit the emergency call button, and eventually passed out. (BOP Am. Compl. at 4, 8). When he hit the button the next day, medical assistance was summoned, and he was taken to the medical unit at MDC, and then to the emergency room at NYU Langone. (*Id.*).

While at NYU Langone, LoCurto was taken into surgery. (NYU Langone Am. Compl. at 7, 18). He alleges his surgeon signaled to the officers that he had died, and that Officer Martinez said, "Fuck him, he's a murderer[,] let him die." (*Id.* at 7). LoCurto woke up, saw people standing around stainless steel tables, and then went into a coma. (*Id.*). He alleges he woke up again after he was taken off life support on January 24, 2021. (*Id.*). While LoCurto was in the ICU after his surgery, one of his doctors, "Dr. Baden," removed a bandage, and three staples popped open "with a gel like substance . . . oozing out of the surgical wounds." (*Id.*). Dr. Baden then ordered a wound vac machine to drain the substance. (*Id.* at 7). LoCurto alleges the gel was used to preserve his organs for organ donation. (NYU Langone Am. Compl. at 7).

3

LoCurto also alleges that while at the hospital, an MRI technician "pumped an unknown fluid into [his] IV line 3 times," and that "on the [third] time," he flat-lined and died. (*Id*. at 4). When he woke up, an officer named Lieutenant Dixon said, "You're safe now[;] we're here to protect you." (*Id*.). LoCurto also claims that another NYU Langone staff member inserted a wire into his nose that caused "great pain." (LoCurto Opp'n to NYU Langone's Mot. to Dismiss dated Aug. 9, 2023 ("LoCurto NYU Opp'n"), Case No. 23-CV-386, Dkt. No. 24 at 3). He also alleges that the staff at NYU Langone had a "betting pool on when [he] would die," and that attempts were made on his life. (NYU Langone Am. Compl. at 4; BOP Am. Compl. at 4). While in the ICU, LoCurto alleges that Officer W. Santiago was trying to kill him, and that the employees of NYU Langone worked in conjunction with BOP to kill him. (*See* BOP Am. Compl. at 16, 20; NYU Langone Am. Compl. at 16, 20; *see also* LoCurto Opp'n to BOP's Mot. to Dismiss dated Dec. 7, 2023 ("LoCurto BOP Opp'n"), Case. No. 23-CV-387, Dkt. No. 28 at 5–6). He simultaneously claims that other staff at NYU Langone called the FBI on his behalf because of these attempts on his life. (BOP Am. Compl. at 4). LoCurto was "in surgery, a coma, and the ICU" until February 6, 2021, and he was released from NYU Langone on February 9, 2021. (LoCurto BOP Opp'n at 3). From there, he was transferred to a nursing home until April 1, 2021, when he returned to MDC. (*Id*.).

On April 6, 2021, LoCurto filed an Inmate Request for Informal Resolution (BP-8), in which he alleged that his food was poisoned and he did not receive medical attention for a day. (BOP Am. Compl. at 7). On May 1, 2021, he submitted a Request for Administrative Remedy (BP-9) about the same incident, (*id*. at 11), and the Warden responded to this request on May 24, 2021. (*Id*. at 10). He alleges that his BP-11 about the incident at the prison was signed by the Central Office on November 20, 2021.

4

(LoCurto BOP Opp'n at 2).  He filed a separate BP-9 on May 27, 2021, where he requested an investigation into what happened to him at NYU Langone while under the protection of the BOP.  (BOP Am. Compl. at 15–16, 19–20).

## DISCUSSION

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

Once the facts are construed in the light most favorable to the non-moving party—here, LoCurto—to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed.

5

R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at *3 (Feb. 23, 2018).

LoCurto alleges murder and attempt or conspiracy to murder under 18 U.S.C. § 1959(a)(1) and § 1959(a)(5), a claim under 42 U.S.C. § 1983, violations of his Eighth and Fourteenth Amendment rights, and tort claims including medical malpractice, assault, and battery claims against NYU Langone.  (NYU Am. Compl. at 3, 6; LoCurto NYU Opp'n at 3–5).  He also alleges "assault, murder, [and] attempted murder" under "a RICO statute[,] both criminal and civil." (LoCurto NYU Opp'n at 3–4).  NYU moved to dismiss LoCurto's Amended Complaint, (NYU Mot. to Dismiss dated Sept. 15, 2023, Dkt. No. 29), arguing that that there is no private right of action under 18 U.S.C. § 1959, (Mem. of Law in Supp. of NYU's Mot. to Dismiss ("NYU Mem. of Law"), Dkt. No. 29-2 at 4–6); and that LoCurto failed to state a claim under § 1983 because NYU Langone is not a state actor.  (*Id.* at 7–9).[1]  For the reasons stated below, the Court recommends dismissing LoCurto's claims against NYU Langone.

---

[1] Although LoCurto filed a Second Amended Complaint, the Court indicated that it would consider NYU's motion to dismiss as applied to the Second Amended Complaint.  (Order dated Aug. 18, 2023).  The motion to dismiss appears on the docket as filed on September 15, 2023.  (Dkt. No. 29).

6

A. <u>Claims Under 18 U.S.C. § 1959</u>

The federal murder statute does not contain a private right of action. LoCurto's attempt to somehow bring federal criminal charges against Defendants or invoke the criminal statutes to state a civil claim is "based on an indisputably meritless legal theory," *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quotations omitted), and the claim must be dismissed. *See, e.g., Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint as frivolous because claims invoking criminal statutes lacked even an arguable legal basis); *Walker v. Wuchte*, No. 22-CV-1532, 2022 WL 2161180, at *2 (E.D.N.Y. June 15, 2022) (dismissing as frivolous *pro se* Plaintiff's attempt to sue Defendants for violations of criminal statutes); *Walker v. Pastoressa*, No. 22-CV-997, 2022 WL 3716742, at *3 (E.D.N.Y. Aug. 29, 2022) (same); *see also Hill v. Didio*, 191 F. App'x 13, 14–15 (2d Cir. 2006) ("A private individual may bring suit under a federal statute only when Congress specifically intended to create a private right of action. . . . As a general matter, we have long recognized that crimes are prosecuted by the government, not by private parties.").

B. <u>RICO Claims</u>

LoCurto also attempts to bring a civil RICO claim for assault, murder, and attempted murder.  (LoCurto NYU Opp'n at 3–4).  LoCurto's claim fails.

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).  "To state a claim under RICO's civil provision, 18 U.S.C. § 1962(c), a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains [an] interest

7

in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. Section 1961(1), in turn, identifies predicate 'acts' that can form a pattern of racketeering activity, which include mail fraud, wire fraud, and extortion[.]" *Liang v. Home Reno Concepts*, LLC, 803 F. App'x 444, 447 (2d Cir. 2020) (first alteration in original) (citations and quotations omitted). Although murder and assault are types of racketeering activity, *see* 18 U.S.C. § 1961(1), a civil RICO claim must be based on economic, not personal, injuries. *See Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) ("All civil RICO injuries are, by the terms of the statute itself, economic losses of one kind or another. A plaintiff bringing a civil RICO claim must allege an injury to his business or property; he cannot, for example, recover for personal injuries." (quotations omitted)). Because LoCurto does not allege economic injury, any RICO claim should be dismissed.

    C. Section 1983 and *Bivens* Claims

Because LoCurto alleges violations of the Eighth and Fourteenth Amendment while under the care of BOP, (LoCurto NYU Opp'n at 5)—a federal, not state facility—the Court construes his claims against NYU under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Anthony v. Med. Staff at Inst.*, 409 F. Supp. 3d 102, 104 (E.D.N.Y. 2016) (construing § 1983 claim brought by plaintiff incarcerated in a federal facility against two private hospitals as *Bivens* claims). But a *Bivens* claim fails because NYU Langone is not a federal actor.

NYU Langone is a private hospital, and "[a] private hospital is generally not considered a state (for section 1983 actions) or federal (for *Bivens* actions) actor."

8

*Anthony*, 409 F. Supp. 3d at 105 (collecting cases).² Having failed to sue a federal actor, LoCurto's *Bivens* claim fails. *E.g.*, *Sockwell v. Bernstein*, No. 07-CV-866, 2007 WL 879582, at *2 (E.D.N.Y. Mar. 21, 2007) ("Because Holliswood Hospital is a private facility, it is not acting under color of state or federal law, and therefore cannot be sued under § 1983 or *Bivens*[.]").

To the extent that LoCurto argues that NYU Langone or its staff should be liable for constitutional violations because it was acting on behalf of BOP, that claim also fails. "The Supreme Court has held that *Bivens* actions may not be brought against private corporations, even when they act under color of federal law." *Rodriguez v. N.Y. Downtown Hosp.*, No. 14-CV-5958, 2015 WL 5244680, at *4 (S.D.N.Y. Sept. 8, 2015) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)) (adopting report and recommendation). Accordingly, any *Bivens* claim based on a connection with BOP against NYU Langone must be dismissed. *See, e.g.*, *El-Hanafi v. United States*, 40 F. Supp. 3d 358, 363 (S.D.N.Y. 2014) (dismissing federal inmate's Eighth Amendment claims brought under *Bivens* against a private company with contracts with the federal government, finding "*Bivens* claims are precluded against private companies" under *Malesko*). And any claim that NYU Langone staff should be liable under *Bivens* also fails. *See id.* at 363–65 (noting *Bivens* remedy is unavailable against employees of

---

² To the extent LoCurto's claim is construed as one under § 1983, it fails because NYU Langone is not a state actor. LoCurto seems to argue that NYU Langone is a state actor because it is funded by state income tax. (LoCurto NYU Opp'n at 5). This argument fails; even if NYU Langone receives state funds, that is not enough to make it a state actor. *See White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("Insofar as [plaintiff] alleged that the private defendants were licensed by the state, the presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action.").

9

private medical providers for violations of the Eighth Amendment, and relying on *Minneci v. Pollard*, 565 U.S. 118, 125–26 (2012)).

D. <u>Medical Malpractice, Assault, and Battery</u>

Because the Court recommends dismissing the federal claims against NYU Langone, it recommends declining to exercise supplemental jurisdiction over the remaining state law claims, including any claim for medical malpractice. 28 U.S.C. § 1367(c); *see, e.g., Rodriguez*, 2015 WL 5244680, at *6 (declining to exercise supplemental jurisdiction over state law medical malpractice claim after dismissing federal claims against defendants).

## CONCLUSION

For the reasons stated above, the Court recommends granting NYU Langone's motion to dismiss in full.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/Sanket J. Bulsara*  August 12, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York